IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MARC DEGARMO,<br><br>    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil No. 12-4911 (RMB)<br><br>**OPINION** |

Appearances

Robert Anthony Petruzzelli
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Jason Parkerson Peck
Office of the U.S. Attorney
District of New Jersey
26 Federal Plaza, Room 3950
New York, NY 10278
    Attorney for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiff Marc DeGarmo (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Child Disability Benefits ("CDB"). For the reasons

1

set forth below, the Court VACATES the decision of the administrative law judge ("ALJ") and REMANDS this action to the ALJ for further proceedings.

I.  **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r of Soc. Sec., 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v.

Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); see also Guerrero v. Comm'r of Soc. Sec., No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical

evidence in the record consistent with his responsibilities under the regulations and case law."").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.
>
> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent

with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## II. Background

Plaintiff was born on March 25, 1983, and is 30 years old. (Administrative Record ("R.") 34.) He is a high school graduate who lives with his mother, and was diagnosed with attention deficit hyperactivity disorder ("ADHD") and autism. (R. 34, 39, 52.) He has also been diagnosed with depression, anxiety, a schizoaffective personality disorder, and a learning disability. (R. 300-12.)

On August 24, 2009, Plaintiff filed applications for DIB and CDB, alleging an onset of disability at birth. (R. 157-62, 163-68.) His claims were denied initially and again on reconsideration. (R. 87-91, 93-98.) Plaintiff then requested a hearing before an ALJ, which was held on March 14, 2011. (R. 29-77.) Plaintiff was represented by counsel at the hearing and both he and his mother testified. (R. 29-77.) At the close of the hearing, the ALJ permitted Plaintiff's counsel additional time to obtain evidence from Plaintiff's employer regarding the issue of whether Plaintiff's earnings are subsidized. (R. 76-77.) To this end, Plaintiff submitted a questionnaire completed

by Richard Trojan, a store manager at the ShopRite where Plaintiff works. (R. 248-49.) The ALJ then denied Plaintiff's claims, concluding that he had not been under a disability within the meaning of the Social Security Act prior to attaining age 22 because he had been engaged in substantial gainful activity ("SGA") since January 1, 2002. (R. 20-21, 27-28.) Because of this finding, the ALJ did not proceed beyond Step One of the analysis.

Plaintiff filed a Request for Review with the Appeals Council, but it was denied on June 21, 2012.[1] (R. 1-5, 14.) This appeal ensued.

## III.  Analysis

Plaintiff argues that the Commissioner committed harmful error at Step One of the evaluation by failing to follow Social Security Ruling 83-33 ("SSR 83-33"),[2] and therefore his determination that Plaintiff engaged in SGA is not supported by substantial evidence. The Court finds that, based upon the evidence in the record, the ALJ could not have made an appropriate determination of whether or not Plaintiff's earnings were subsidized by his employer on account of his disability.

---

[1] When Plaintiff's Request for Review was denied, the ALJ's decision denying benefits became the final decision of the Commissioner.

[2] SSR 83-33, TITLES II AND XVI: DETERMINING WHETHER WORK IS SUBSTANTIAL GAINFUL ACTIVITY—EMPLOYEES, 1983 WL 31255. Social Security Rulings are binding on all components of the Social Security Administration ("SSA") under 20 C.F.R. § 402.35(b)(1).

7

At Step One, if it is determined that the claimant is engaging in SGA, then the claim will be denied. 20 C.F.R. § 404.1520. SGA is "work activity that involves [] significant physical or mental activities" that is done for pay or profit. Id. § 404.1572(a)-(b). A person earning more than a designated monthly amount that is calculated based upon the national average wage index is ordinarily said to be engaging in SGA. See id. § 404.1574(b)(2). In 2002, the SGA earnings level was $780 and it has increased each year up to its current level of $1,040 per month.[3]

In evaluating whether the claimant engaged in SGA, the starting point is the claimant's earnings. 20 C.F.R. § 404.1574(a)(1) ("Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity."). The ALJ found that Plaintiff's gross earnings from his work collecting grocery carts at ShopRite are at the SGA level beginning January 1, 2002. (R. 20, 27.) This finding is amply supported by the record, which reflects the following amounts:

| Year | Plaintiff's Annual Earnings | SSA's Monthly SGA Amount |
|---|---|---|
| 2002 | 10,106.44 | 780.00 |

---

[3] Substantial Gainful Activity, SSA, http://www.ssa.gov/OACT/cola/sga.html (last accessed July 26, 2013).

8

| 2003 | 12,301.89 | 800.00 |
|------|-----------|--------|
| 2004 | 13,222.68 | 810.00 |
| 2005 | 12,788.62 | 830.00 |
| 2006 | 14,494.03 | 860.00 |
| 2007 | 12,888.19 | 900.00 |
| 2008 | 14,679.17 | 940.00 |
| 2009 | 14,535.16 | 980.00 |

(R. 170, 225, 248.) Plaintiff does not dispute his average monthly earnings over the relevant period or that these earnings are above the SGA level.[4]

The regulations require that any "subsidized earnings" be deducted from gross earnings in determining whether the claimant was engaged in SGA. 20 C.F.R. §§ 404.1574(a)(2), (b)(1). As explained in SSR 83-33, "[a]n employer may, because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed. When this

---

[4] Plaintiff argues that the ALJ committed legal error by failing to indicate whether Plaintiff's average earnings fall above or below the primary and secondary amounts in the Earnings Guidelines. Plaintiff argues that this failure is critical as it determines the subsequent analysis of countable earnings using the "test of comparability" and "test of worth." Under a prior regulatory structure, earnings between the primary and secondary amount necessitated consideration of work activity circumstances. See SSR 83-33. However, this tiered-income structure was eliminated in 2001 — prior to the relevant time period in this action. Therefore, the ALJ did not commit error in stating only that Plaintiff's income was above the SGA level. See SSA, Social Security Disability Insurance Program Worker Experience, Actuarial Study No. 118, at 3 (June 2005), available at http://www.ssa.gov/OACT/ NOTES/pdf_studies/ study118.pdf; 20 C.F.R. § 404.1574; see also Flecha v. Shalala, 872 F. Supp. 1312, 1317 (D.N.J. 1994) ("Social Security rulings are entitled to deference, except when they are plainly erroneous or inconsistent with the Act.").

9

occurs, the excess will be regarded as a subsidy rather than earnings." SSR 83-33; see also 20 C.F.R. § 404.1574(a)(2). SSR 83-33 provides seven circumstances that suggest a "strong possibility" of a subsidy:

1. "Sheltered" employment; or
2. Childhood disability is involved; or
3. Mental impairment is involved; or
4. There appears to be a "marked discrepancy between the amount of pay and the value of the services"; or
5. The employer, employee, or other interested party alleged that the employee does not fully earn his pay (e.g., the employee receives unusual help from others); or
6. The nature and severity of the impairment indicate that the employee receives unusual help from others; or
7. The employee is involved in a government-sponsored job training and employment program.

Id.[5] If a subsidy is found, then the amount of the subsidy must be determined and subtracted from the amount of gross earnings. See SSR 83-33.

Plaintiff first contends that the ALJ failed to consider SSR 83-33, but this argument is contradicted by the ALJ's decision. In explaining that it was necessary to deduct any subsidized earnings from Plaintiff's gross earnings, the ALJ cited SSR 83-33 and provided the definition of subsidized earnings set forth therein. (R. 20-21, 27-28.) He then went on to address certain evidence in the record consisting of

---

[5] It should be noted that under SSR 83-33 the presence of any or all of these factors suggests that earnings are subsidized but does not conclusively decide the issue.

10

Plaintiff's testimony and a questionnaire submitted by Mr. Trojan concerning Plaintiff's work productivity and responsibilities. (Id.) Thus, the ALJ's examination of the facts fits within the framework of SSR 83-33 and demonstrates his consideration of the relevant factors.[6] See Mayo v. Astrue, 2012 WL 3185418, at *10 (D. Del. Aug. 3, 2012) (finding that while analysis was brief, the facts fit into the SSR "rubric" and therefore sufficient evidence supported ALJ's determination); Hur, 94 F. App'x at 133; cf. Stone v. Colvin, No. 11-CV-1459, 2013 WL 2156035, at *4 (N.D. Tex. May 20, 2013) (finding ALJ's failure to discuss or even mention the possibility of "special conditions" constituted legal error requiring reversal). Having found that the ALJ applied the correct legal principles, the Court now turns to whether his conclusion that Plaintiff's income is not subsidized is supported by substantial evidence.

As the ALJ noted, the record suggests that Plaintiff obtained his position with one of ShopRite's predecessors competitively more than ten years ago as part of his high school co-op program. (See R. 35-36.) Plaintiff testified that it was his responsibility to find the position and that he was required to apply and fill out an application for the position by

---

[6] Plaintiff's counsel also presented argument on the subsidy issue during the hearing and it was discussed with the ALJ at some length. (See R. 72-77.) In fact, Mr. Trojan's questionnaire was designed to address the question of whether Plaintiff's earnings were subsidized on account of his disability. (See R. 76, 248-49.)

himself. (R. 36.) His mother further testified that she went with him to the store and filled out the employment application for him. (R. 57.) Because Plaintiff was hired by prior management, Mr. Trojan could not comment on whether ShopRite considered Plaintiff's impairments in deciding whether to hire him. (R. 248.) However, ShopRite does not receive special tax incentives for employing Plaintiff. (R. 248.)

The record also contains evidence that Plaintiff's employer values his work. Mr. Trojan explained that Plaintiff is asked only to do things that he "can accomplish successfully" and, to date, that is gathering carts in the parking lot. (R. 248.) Plaintiff also sometimes sweeps the sidewalks in front of the store though someone else is responsible for general parking lot maintenance. (R. 38-39.) For this, Plaintiff is paid $9.75/hour – $2.50 more than state and federal minimum wage. (R. 248, 246.) The ALJ's decision appears to rely heavily on the fact that after responding to the listed questions, Mr. Trojan added at the bottom of the questionnaire, "[w]e value [Plaintiff] for his work ethic and dependability." (R. 248; see also 21, 28.) In fact, further demonstrating that Plaintiff's work is valued, Plaintiff testified that he is sometimes asked to work more hours if another employee is on vacation or when there is an uptick in business such as around holidays. (R. 49.)

However, the ALJ's decision does not adequately address Mr. Trojan's assertion that several employees make less than, or similar amounts as, Plaintiff but perform more job duties. (See R. 21, 28, 248-49.) According to Mr. Trojan, these individuals eventually will make more money than Plaintiff. (Id.) If these other employees perform more work for equivalent or lesser pay than Plaintiff, then Plaintiff's earnings seem to be subsidized. It is possible that the difference in earnings relative to work responsibilities is accounted for by some other factor, such as the length of time the individuals have been employed by ShopRite. In other words, Plaintiff's earnings may be the result of his more than ten-year employment history with ShopRite and its predecessors while these other employees may be more recent hires. Mr. Trojan's questionnaire does not make it clear whether these other individuals are similarly-situated to Plaintiff in terms of tenure with the company. Nor does it address what ShopRite would pay other employees with similar tenure who complete the same tasks that Plaintiff completes (i.e., collecting carts and occasionally sweeping the sidewalks). Because the record is devoid of evidence on this issue, the Court must remand to the ALJ for further proceedings.[7] See, e.g.,

---

[7] Likewise, the ALJ's conclusion that the record does not support a finding of a marked discrepancy between Plaintiff's pay and the value of the services he provides (R. 21, 28) cannot be sustained. Plaintiff contends that his hourly wage demonstrates a marked discrepancy because he "was paid $9.75 per hour to only collect carts in a supermarket parking lot." (Pl.'s Br., Dkt. Ent. 9 at

13

Kuczewski v. Comm'r of Soc. Sec., No. 12-43, 2013 WL 1007684, at *4 (D.N.J. Mar. 12, 2013) (remanding to ALJ where record incomplete); Andino v. Comm'r of Soc. Sec. Admin., No. 12-2945, 2013 WL 3354429, at *8-9 (D.N.J. July 3, 2013) (finding ALJ's assumptions unsupported by record and remanding for further development of whether the plaintiff engaged in SGA); see also 2 Barbara Samuels, Soc. Sec. Disab. Claims Prac. & Proc. § 19:62 n.2 (2d ed. 2012) ("Remand is appropriate where the record is incomplete.") (collecting cases).

The ALJ also relied on the fact that Mr. Trojan "did not state that the claimant receives special supervision or help in performing his duties." (R. 21, 28.) However, the questionnaire did not specifically ask whether Plaintiff received special supervision or assistance in performing his duties, or whether he completed them at a slower pace than other, unimpaired employees. The absence of such questions (and answers) undermines the ALJ's conclusion that Plaintiff's earnings are not subsidized. The ALJ should address these deficiencies on remand.

Instead, the questionnaire asked only "if special consideration of any sort is given to Mr. DeGarmo in the job

---

10.) Here, again, it is necessary to understand whether Plaintiff's earnings stem from his employment at the same store location for more than 10 years and, by extension, what hourly wage ShopRite would pay another employee with the same tenure to complete the same tasks.

14

**assignments** that he is given" to which his employer replied that Plaintiff is only asked to do what he is capable of doing. (R. 248 (emphasis added).) Plaintiff asserts that "he receives unusual help [completing his responsibilities] in the form of the severe restriction in his assigned duties," i.e., he is only asked to collect carts, and that this suggests his income is subsidized. (Pl.'s Br. 10.) The ALJ, however, credited Plaintiff's testimony that he works with approximately five or six employees who also strictly gather carts[8] (R. 39; see also id. at 21, 28), which would suggest that any restrictions to Plaintiff's responsibilities do not necessarily constitute "unusual help." Furthermore, that his employer does not assign him additional tasks seems to be a minimal accommodation to Plaintiff's impairments that would not preclude a finding that Plaintiff engaged in SGA. See Reeves v. Astrue, No. CV 10-259, 2011 WL 4048519, at *3 (C.D. Cal. Sept. 9, 2011) ("[T]he Court concludes that the Agency did not err when it concluded that Plaintiff's job at the VA amounted to substantial gainful activity despite the fact that her employer made accommodations to allow her to work. The accommodations were minimal and Plaintiff earned her wages."). However, as the Court is

---

[8] This testimony is not inconsistent with Mr. Trojan's statement that there are employees who were assigned carts but who, unlike Plaintiff, "have proven capable" of handling other tasks. (R. 248-49.) Rather, it could reasonably be inferred that those employees initially performed limited duties but ultimately assumed more responsibilities.

remanding this action for further proceedings, it need not decide this issue now.

IV. **Conclusion**

For the reasons set forth above, the decision below is VACATED, and this case is REMANDED to the ALJ for further proceedings consistent with this Opinion.

                                                  s/Renée Marie Bumb
                                                  RENÉE MARIE BUMB
                                                  United States District Judge

Date: August 21, 2013